UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIEDREA THOMPSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:19-cv-03220-MTS |
| NORMANDY SCHOOLS COLLABORATIVE, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

Plaintiff Diedrea Thompson alleges that Defendant Normandy Schools Collaborative violated Title VII of the Civil Rights Act of 1964 when it fired her in 2018 after she made complaints regarding Defendant's pay and hiring practices. Defendant has now moved for summary judgment, arguing that the undisputed facts demonstrate there was no causal relationship between Plaintiff's complaints and firing and that Plaintiff was not subject to disparate treatment. Doc. [33]. For the reasons that follow, the Court agrees with Defendant, so the Court will grant Defendant's Motion.

**I.   BACKGROUND**

The Court must first address what facts are before it for purposes of summary judgment. In compliance with Local Rule 4.01(E), Defendant filed with its Motion for Summary Judgment a Statement of Uncontroverted Material Facts ("SOF"). Doc. [35]. Defendant properly supported the facts provided in its SOF with citations to the record. *See* L.R. 4.01(E) ("The Statement of Uncontroverted Material Facts must set forth each relevant fact in a separately numbered paragraph stating how each fact is established by the record, with appropriate supporting citation(s)."). Along with her Opposition to the Motion, Plaintiff filed her response to those facts.

1

Doc. [37]. That response is replete with issues. To begin with, Plaintiff failed to respond in any fashion to several of the sixty-seven facts asserted in Defendant's SOF. *See* Doc. [37] ¶¶ 3–18, 26–30, 35–37, 40, 44–49, 54–55, 57, 67. Where she did provide responses beyond admitting various facts as true, Plaintiff did not properly controvert Defendant's SOF, instead making improper legal arguments and generally failing to address the specific facts put forth by Defendant. *See, e.g., id.* ¶¶ 19–20, 31–34, 41, 43, 51, 56, 58–66. As a result, consistent with this Court's Local Rules, the Federal Rules of Civil Procedure, and relevant precedent, the Court will deem Plaintiff to have admitted the facts in Defendant's SOF for purposes of summary judgment. *See* L.R. 4.01(E); *Freeman v. Adams*, No. 1:12-cv-86-SNLJ, 2014 WL 1056760, at *5 n.4 (E.D. Mo. Mar. 19, 2014) ("The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1)."); *State Farm Fire and Cas. Co. v. Dado's Café, Inc.*, 421 F. Supp. 3d 720, 724–25 (E.D. Mo. 2019) (deeming SOF admitted where nonmoving party made legal arguments in response to SOF); *Keen v. Merck Sharp & Dohme Corp.*, 819 F. App'x 423, 424 (7th Cir. 2020) (noting, based on similar local rule, that legal objections are insufficient to oppose facts).

Furthermore, Plaintiff submitted not only a response to Defendant's SOF, but also an SOF of her own. Doc. [35] at 19–42. But the Local Rules do not contemplate that a party opposing summary judgment may file its own SOF; rather, the Rules provide that the nonmovant must file a *response* to the moving party's SOF for the purpose of making clear which facts the nonmovant contends are in dispute. *See* L.R. 4.01(E) ("The opposing party also shall note for all disputed facts the paragraph number from the moving party's [SOF]."). To the extent that Plaintiff's SOF could be considered a further response to Defendant's SOF within the meaning of L.R. 4.01(E),

Plaintiff's SOF is deficient in numerous respects: Plaintiff makes multiple factual assertions without the required "specific citation" to the record, does not note the paragraph number of Defendant's SOF to which she purports to respond, provides myriad immaterial or irrelevant alleged facts, and makes assertions that are misrepresentations of or are unsupported by the evidence she cites.[1]  For all those reasons, Plaintiff's SOF is improper and does not comply with L.R. 4.01(E), so the Court will not consider it in its summary judgment analysis.  *Cf. Jones v. United Parcel Serv.*, 461 F.3d 982, 990 (8th Cir. 2006) (affirming decision to deem facts admitted where response "suffer[ed] from misleading and inaccurate statements, and often omit[ted] the citations to the record required by the local rule"); *Garrett v. Embrey*, 2018 WL 5298468, at *2 (E.D. Mo. Oct. 25, 2018); *Cigainero v. Carnival Corp.*, 426 F. Supp. 3d 1299, 1301 (S.D. Fla. 2019) ("The Court notes that several of Plaintiff's facts in her responsive statement of facts are unsupported by record citations.  The Court has no obligation to go digging through the record to find the support that Plaintiff has omitted and therefore ignores those factual assertions." (citation omitted) (citing *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1373 (11th Cir. 1997))).  With that clarified, the Court now turns to the relevant factual background here.

Defendant hired Plaintiff in October 2012 as a human-resources ("HR") generalist, a position that did not require any certification or license.  Doc. [35] ¶¶ 36–39.  Her beginning salary was $46,593.  *Id.* ¶ 40.  On January 9, 2015, Plaintiff was given additional duties and the title of HR Generalist and Core Data Specialist.  With those additional duties came a raise in annual salary, from the $46,493 she made when Defendant first hired her to $58,242.  *Id.* 43–44.  On July 1,

---

[1] For example, in paragraph 10 of her SOF, Plaintiff asserts that she "was performing two [full-time equivalents] during the course of her employment with Defendant," citing to deposition testimony of Andrea Turner, Defendant's benefits coordinator, that does not support that assertion.  Doc. [37] at 21.  Moreover, Plaintiff herself testified in her deposition that she performed one full-time equivalent during her employment, a fact she conceded in more than one of her responses to Defendant's SOF.  *See* Docs. [35-3] at (32:15–33:3); [37] ¶¶ 19, 34, ("Thompson was performing one FTE but had many duties.").

3

2016, Plaintiff was again promoted, this time to Coordinator of HR, and she received a corresponding increase in her annual salary to $70,741. *Id.* ¶¶ 45–46. Her salary was adjusted to $75,039 on February 13, 2017, and it was again increased to $77,491 on July 1, 2017. *Id.* ¶¶ 47–49. During the course of her employment with Defendant, Plaintiff performed one full-time equivalent ("FTE"), which appears to be a measure of how many distinct jobs an employee held with Defendant. *Id.* ¶ 50; Docs. [35-3] at (31:17–33:3); [34] at 14–15. She was an at-will employee during her employment with Defendant. Doc. [35] ¶ 67.

The events leading to Plaintiff's firing arose out of her application for tuition reimbursement from Defendant. Defendant offers its employees a tuition reimbursement program to reimburse the costs of preapproved coursework. Doc. [35-1] at 27–28. Reimbursement requires that (1) the course is approved before the employee takes it, (2) at the time she registers for the course, the employee obtains from the institution an official paid receipt showing the amount she paid, and (3) once the course is completed, the employee submits to the director of HR the course approval application, the official paid tuition receipt, and an official grade card or transcript. *Id.* at 28. On January 31, 2018, Plaintiff submitted to Gerald Fuller, the director of HR, an application for tuition reimbursement, along with applications on behalf of nine other employees. Doc. [35] ¶¶ 54–59. The other employees' applications were accompanied by the required supporting documentation, but Plaintiff's application did not include the required documents. *Id.* ¶¶ 58–59. The same day Plaintiff submitted the applications, Fuller requested that Plaintiff submit her supporting documentation. Doc. [37-1] at 4. Plaintiff indicated in a response the next day that she had the required "forms" and "data." *Id.* After Plaintiff had failed to submit the required documents by February 13, 2018, Fuller informed Plaintiff that if she failed to provide any supporting documents for her application, Defendant would deem it a "willful intent to falsify

4

records." Doc. [35] ¶ 61.  Plaintiff never submitted her documentation.  *Id.* ¶ 64.  On February 28, 2018, Defendant fired Plaintiff for willfully submitting her tuition reimbursement application without supporting documentation while knowing she did not have that documentation, which Defendant interpreted as an intent to falsify records in violation of its staff conduct policy.  *Id.* ¶ 65; Doc. [37-1] at 11.

Of relevance here, in her deposition, Plaintiff testified that on January 24, 2015, she had a meeting with various members of Defendant's executive leadership team during which she complained that Defendant's hiring process was discriminatory based on age and race.  *See* Doc. [37-5] at (18:2–20:25).  In February 2015, Plaintiff made a complaint to the Missouri Department of Labor ("MDOL") regarding alleged overtime pay disparities between Plaintiff and other employees.  *Id.* ¶ 41; Doc. [35-3] at (25:10–26:9).  She did not, in that complaint, raise issues regarding discriminatory practices, and the complaint was not about race.  Docs. [35] ¶ 42; [35-3] at (29:5–12).  Contending that she was fired because of those complaints and was paid less than similarly situated coworkers because of her race, Plaintiff filed this action against Defendant, alleging retaliation and disparate treatment in violation of Title VII.  Doc. [1].

**II.    LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact exists if a reasonable jury could return a verdict for" the non-movant.  *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1051 (8th Cir. 2012) (quoting *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692 (8th Cir. 2009)).

The moving party bears the initial burden of "informing the district court of the basis for

its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotations marks omitted).  The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist.*, 528 F.3d 1074, 1079 (8th Cir. 2008)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment.  *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1002 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.  "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." *Shirrell v. Saint Francis Med. Ctr.*, 24 F. Supp. 3d 851, 855 (E.D. Mo. 2014).

Finally, while Plaintiff cites several older Eighth Circuit cases for the proposition that "summary judgment should seldom be used in employment-discrimination cases," see Doc. [38] at 9, that court has more recently and repeatedly emphasized that "[t]here is no discrimination-case exception to a district court's power to grant summary judgment." *See, e.g.*, *Lovelace v. Wash. Univ. Sch. of Med.*, 931 F.3d 698, 705 (8th Cir. 2019); *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 923 (8th Cir. 2014); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011); *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010).  In fact, the Eighth Circuit has expressly explained that any decisions "asserting a different standard of review for summary judgment in employment discrimination cases are contrary to Supreme Court precedent," and accordingly it has instructed district courts not to follow any statements to the effect that summary

6

judgment is disfavored in discrimination cases. *See Torgerson*, 643 F.3d at 1043 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). Consistent with that precedent, the Court will not treat Plaintiff's claims differently from any "other ultimate questions of fact." *Reeves*, 530 U.S. at 148.

### III.   DISCUSSION

Based on the undisputed facts here, the Court finds that both of Plaintiff's claims fail as a matter of law. The Court will first explain the shortcomings of Plaintiff's retaliation claim before addressing her claim for disparate treatment.

#### A.   Retaliation

Plaintiff has not provided any direct evidence of retaliation, so the Court analyzes her retaliation claim under the burden-shifting framework laid out in *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kempf v. Hennepin Cnty.*, 987 F.3d 1192, 1196 (8th Cir. 2021). First, Plaintiff bears the initial burden of demonstrating that (1) she engaged in protected conduct, (2) a reasonable employee would have found the alleged retaliatory action materially adverse, and (3) there is a causal link between the protected conduct and the materially adverse action. *Id.* If Plaintiff establishes her prima facie case of retaliation, the burden shifts to Defendant to provide a legitimate, non-retaliatory reason for firing her. *Id.* If Defendant carries that burden, Plaintiff must then establish that the proffered non-retaliatory reason for firing her was pretextual. *Id.*

Plaintiff has not, on the undisputed facts before the Court, established a prima facie case of retaliation. A reasonable employee would have found Defendant's decision to fire Plaintiff to be adverse, so Plaintiff has satisfied the second prong of her prima facia case. *See id.* But, assuming Plaintiff has established that she engaged in protected conduct,[2] she has not

---

[2] Defendant "concedes that Plaintiff's complaint to the Missouri Department of Labor is a protected activity," but the Court is not so sure. *See* Doc. [42] at 2. To qualify as a protected activity, Plaintiff must show "an objectively

7

demonstrated the necessary causal link between the alleged protected conduct and her firing.

The only alleged protected actions before the Court are Plaintiff's complaint to the executive leadership team in January 2015 and her complaint to the MDOL in February 2015. On the undisputed facts here, there is insufficient circumstantial evidence to support an inference of causation between Plaintiff's complaints and her 2018 firing. "Generally, . . . more than a temporal connection between protected activity and an adverse employment action is required to show a genuine factual issue on retaliation exists." *Gibson v. Concrete Eqip. Co.*, 960 F.3d 1057, 1065 (8th Cir. 2020) (quoting *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 716 (8th Cir. 2000)). The amount of time that elapsed between the alleged protected activities here and the date of Plaintiff's firing does not support an inference of a causal connection; Plaintiff's complaints in early 2015 were over three years before her firing in February 2018. *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 985 (8th Cir. 2011) ("The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months."). Moreover, Plaintiff's repeated promotions and increases in salary *after* she engaged in the alleged protected activity further undermine her assertion that she was fired because of her complaints. *Cf. Jeffries v. Wal-Mart Stores, Inc.*, 15 F. App'x 252, 261 (6th Cir. 2001) (noting that "an intervening promotion may *undermine* the strength of the inference [of causation]" in rejecting argument that such a promotion defeats, as a matter of law, the existence of a causal link); *Colenburg v. STARCON Int'l, Inc.*, 656 F. Supp. 2d 947, 957–58 (D. Minn. 2009) (finding

---

reasonable belief than an actionable Title VII violation has occurred." *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 664–65 (8th Cir. 2021) (quoting *Gibson v. Concrete Equip. Co.*, 960 F,3d 1057, 1064 (8th Cir. 2020)). Given Plaintiff's admission that the DOL complaint was not about race or any other protected class, the Court is skeptical that complaint qualifies as a protected action. *See* Docs. [35-3] at (27:10–15), (29:5–12); [37] ¶ 42. Nonetheless, Plaintiff's January 24, 2015 complaint to Defendant's executive leadership team, which pertained to race and age discrimination, surely was a protected action. For purposes of its summary judgment analysis, the Court will assume both complaints constitute protected actions within the meaning of the Title VII retaliation caselaw.

promotions and increases in pay after alleged complaint inconsistent with alleged retaliatory intent). Finally, Fuller, who recommended to Defendant's superintendent that Plaintiff be fired, see Doc. [37-4] at (64:11–65:23), was hired in August 2017, well over two years after the later of Plaintiff's two complaints. Doc. [35] ¶ 1. For all those reasons, no reasonable juror could conclude Plaintiff's complaints were a "determinative—not merely motivating—factor in [Defendant's] adverse employment decision." *Tyler*, 628 F.3d at 985 (quoting *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008)). Plaintiff has thus failed to establish her prima facie case.

Even if Plaintiff had carried her burden of establishing a prima facie case of retaliation, Defendant has provided a legitimate, nondiscriminatory reason for firing Plaintiff. Based on the emails exchanged between Fuller and Plaintiff, it appears clear that Fuller was increasingly suspicious of Plaintiff's continued failure to provide the required documents supporting her tuition reimbursement application, particularly after she represented to him that she had that information. *See* Doc. [37-1] at 4–6. He informed Plaintiff that he would view her failure to provide the documents as an intentional attempt to falsify records, a violation of Defendant's staff conduct policy. Doc. [37-1] at 7; *see id.* at 13. While Plaintiff may disagree with the decision to fire her over her failure to provide documents for tuition reimbursement, absent evidence of discriminatory or retaliatory animus behind that decision, it is not for this Court to second-guess Defendant's judgment in firing Plaintiff. *See Grabovac v. Allstate Oms. Co.*, 426 F.3d 951, 955–56 (8th Cir. 2005) ("It is well-established 'that the employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve intentional discrimination.'" (quoting *Hutson v. McDonnel Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995))); *Haigh v. Gelita USA, Inc.*, 632 F.3d 646, 470–71 (8th Cir. 2011).

9

Because Defendant provided a legitimate, nondiscriminatory explanation for Plaintiff's firing, the burden would then shift back to Plaintiff to show that the decision to fire her for the tuition reimbursement incident was pretextual. To show pretext, Plaintiff must "both discredit [Defendant's] explanation" for firing her and must also provide facts that "permit drawing a reasonable inference that the real reason" for her firing was retaliation. *See Kempf*, 987 F.3d at 1196 (quoting *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 918 (8th Cir. 2007)). Plaintiff has done neither here. As the Court already explained, it is unpersuaded that the facts here suggest the decision to fire Plaintiff had anything to do with her years-earlier complaints. On the undisputed facts, Plaintiff's claim for retaliation fails, and Defendant is due judgment as a matter of law on that claim.

### B. Disparate Treatment

Plaintiff alleged in her Complaint that Defendant paid her less than "her white counterpart . . . performing the same job as a human resource coordinator." Doc. [1] ¶ 44. She further asserted that "[r]ace was a motivating factor in the decision to pay plaintiff substantially less than similar the situated white individuals performing the same job." *Id.* ¶ 53. Specifically, Plaintiff felt she was not being paid an appropriate amount because she performed duties outside the scope of her original assignment at various times during her employment with Defendant. Doc. [38] at 7. As with Plaintiff's retaliation claim, the absence of direct evidence of discrimination here means that the Court will assess her Title VII disparate treatment claim using the *McDonnell-Douglas* framework. *See Hylton v. Watt*, No. 17-2023 (RDM), 2018 WL 4374923, at *2 (D.D.C. Sept. 13, 2018). A prima facie case of disparate treatment under *McDonnell Douglas* requires that Plaintiff show (1) she is a member of a protected class, (2) she was meeting Defendant's legitimate job expectations, (3) she suffered an adverse employment action, and (4) she was treated

10

differently from similarly situated employees outside the protected class. *Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725, 729 (8th Cir. 2019).

Defendant argues that Plaintiff has failed to establish the second and fourth elements of her disparate treatment claim. *See* Doc. [34] at 12–13. The Court need not address the second element, because it finds that Plaintiff has failed to provide "specific, tangible evidence" of a similarly situated employee outside the protected class who Defendant treated differently than it treated her. *Rinchuso*, 944 F.3d at 740. In her Complaint, Plaintiff did not specifically name her similarly situated "white counterpart," though she did state that "Clarissa Boyd held the title of H.R. Coordinator before it was given to Plaintiff" and that "Boyd received approximately seventy thousand dollars while performing the same job as Plaintiff." Doc. [1] ¶ 15. Boyd, however, like Plaintiff, is African American. Regardless of whether Plaintiff was treated differently than Boyd, Boyd is not "outside the protected class," and she thus cannot serve as the comparative basis for Plaintiff's disparate treatment claim. *See Rinchuso*, 944 F.3d at 729. In her deposition, Plaintiff identified Dannah Steele as the "white counterpart with similar duties" to whom Plaintiff compares herself. Doc. [34] at 14. But Steele was not similarly situated to Plaintiff.

Defendant hired Steele as an Instructional Coach in August 2013, with a starting salary of $47,869. Doc. [35] ¶ 18. When she was hired, she had a certification in teaching, and she later acquired a certification in administration. *Id.* ¶ 20; Doc. [34] at 14. Unlike Plaintiff, Steele was a contract employee, and after promotions to Content Professional Developer Special Programs in 2014 and Content Specialist in 2015, Steele was promoted to Assistant Principal and Principal in 2016 and 2017, respectively. Doc. [35] ¶¶ 21–27, 32. Plaintiff conceded that Steele was working the equivalent of two positions for Defendant, performing both an administrative role and also the role of a coordinator. Doc. [34] at 14–15. When Steele resigned from Defendant in 2018, her

11

annual salary was $87,500. *Id.* ¶ 28. There is no indication in the record that Steele ever worked in human resources or held the same position as Plaintiff. To be considered similarly situated for purposes of a Title VII discrimination analysis, Plaintiff must show that the proffered comparator is similar "in all relevant respects." *Rinchuso*, 944 F.3d at 730; *Ray v. Henderson*, 221 F.3d 1343, 1343 (8th Cir. 2000) (per curiam). The aspects of Plaintiff's employment relevant to pay surely include the position to which she was hired, her qualifications for any position, and the roles she performed while working for Defendant. The facts here demonstrate that, rather than being "similarly situated in all relevant respects," Steele *differs* from Plaintiff in several important areas: she was hired to a different position, never appears to have performed the same job or duties as Plaintiff, and in fact had more responsibilities, and had certifications relevant to working at an educational institution that Plaintiff did not have. Steele thus does not satisfy the "rigorous" similarly situated test, and Plaintiff has failed to establish even her prima facie case of disparate treatment. *See Maras v. Curators of Univ. of Mo.*, 983 F.3d 1021, 1029 (8th Cir. 2020) (citing *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 938 (8th Cir. 2019)); *Gardner v. Wal-Mart Stores, Inc.*, 2 F.4th 745 (8th Cir. 2021) (explaining that individuals used for comparison cannot have "any . . . distinguishing circumstances" (quoting *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613, (8th Cir. 2014) (en banc))).

The ultimate question the Court must consider when confronted with a disparate treatment claim is whether Plaintiff has demonstrated that Defendant intentionally discriminated against her. *Main v. Ozark Health, Inc.*, 959 F.3d 319, 327 (8th Cir. 2020) ("In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" (alterations in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47 (2000))). On the undisputed facts before the Court, the Court

finds that Plaintiff has not established that Defendant intentionally discriminated against her on the basis of race, so it will grant Defendant summary judgment on Plaintiff's disparate treatment claim.

## CONCLUSION

On the undisputed facts, Plaintiff failed to establish the necessary causal connection between Defendant's decision to fire her and her protected complaints, and thus she did not demonstrate a prima facie case of retaliation. Further, Defendant's decision to fire Plaintiff for her failure to comply with the staff conduct policy was a legitimate, nondiscriminatory reason to fire her. Plaintiff's claim for disparate treatment also falls short, as Plaintiff did not provide any similarly situated employee outside the protected class who Defendant treated differently. Plaintiff's claims therefore fail as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Normandy Schools Collaborative's First Amended Motion for Summary Judgment, Doc. [33], is **GRANTED**.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 2nd day of August, 2021.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE